Byron SIDERAS
and Nancy Sideras
*v.*
DEPARTMENT OF REVENUE
*and*
MULTNOMAH COUNTY,
*Intervenor*
(TC 3630)

Nancy Sideras appeared *pro se* for plaintiffs.

Defendant waived participation in the trial.

Sandra N. Duffy, Assistant County Counsel, Multnomah County, represented intervenor.

Decision for intervenor rendered April 18, 1995.

### CARL N. BYERS, Judge.

Plaintiffs appeal the assessed value of their floating home for the 1992-93 tax year. Plaintiffs claim error in the trending of the 1991 value (fully completed) and that the attached swim float is not taxable.

## FACTS

In August 1990, plaintiffs purchased an unfinished floating home on a concrete float for $55,000. Plaintiffs had the floating home moved to Casselman's Wharf, approximately 10 miles north of downtown Portland on Highway 30. Plaintiffs acted as their own contractors and completed construction of the floating home. Although the floating home was still under construction on January 1, 1991, Multnomah County assessed the property at its completed value of $152,000 on July 1, 1991. Plaintiffs appealed, and in *Sideras v. Dept. of Rev.*, No. 3419 (1994) (unpublished) the Tax Court held that the correct property identification date for the 1991 tax year was January 1, 1991.[1] Because the property was only 62 percent complete on that date, the court found that the correct value for the July 1, 1991, assessment date was $94,200. Plaintiffs now appeal from Opinion and Order No. 93-2418, which held that the real market value of the subject property for the 1992-93 tax year was $159,600.

## ISSUES

The parties agree that the two issues before the court are:

---

[1] The confusion that existed in 1991 as to the correct property identification date and the assessment date resulted from retroactive legislative changes. There is no such confusion with regard to the 1992-93 tax year.

1.   Was it appropriate for the county to establish real market value by trending five percent from the 1991 completed value of $152,000?

2.   Is the swim float taxable?

## ANALYSIS

Plaintiffs assert that it was improper for the county to set a value and add a trending factor simultaneously for the same tax year. Plaintiffs agree that a completed value should be used for the 1992-93 tax year, but claim it is only $147,392. This figure is the county's completed value of $152,000, less $4,608 for the swim float which plaintiffs claim is not taxable.

Plaintiffs did not provide any market information as to the value of the floating home. Intervenor, Multnomah County (county), based its assessed value on the trending of the completed value which was originally placed on the July 1 assessment roll for the 1991-92 tax year. The county acknowledges that the identification date for 1991-92 was January 1, and the July 1 assessed value was as of that date. However, as of July 1, 1991, the floating home was completed and had a value of $152,000. Thus, to determine the July 1, 1992, assessment, the county trended $152,000 five percent and arrived at its $159,600 assessment. The county introduced its ratio study reports to bolster its opinion of value.

■      ORS 305.427[2] provides that:

"In all proceedings before the tax court * * * a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the parties seeking affirmative relief * * *."

Plaintiffs submitted no evidence to show that the real market value of the subject property, as established by the county, was incorrect. Accordingly, the court concludes that the county's method of valuation was correct.

The second issue before the court is the taxability of the swim float attached to the floating home.

------

[2] All citations to the Oregon Revised Statutes are to the 1992 Replacement Part.

■■   Generally, tangible personal property which is held "for personal use, benefit or enjoyment" is exempt from taxation. ORS 307.190. However, there are certain exceptions, one of which is "[f]loating homes or boathouses, as defined in ORS 830.700." ORS 307.190(1)(c). A boathouse is defined as "a covered structure on floats or piles used for the protected moorage of boats." ORS 830.700(3). A floating home is defined as "a moored structure that is secured to a pier or pilings and is used primarily as a domicile and not as a boat." ORS 830.700(5). The swim float is neither a boathouse or a floating home. Floating alone, there is no question that a swim float is personal property held for personal use. Consequently, a swim float is taxable only if it is part of the floating home.

■   In determining whether the swim float is part of the floating home, the court must determine the intent of the legislature regarding the taxation of floating homes. The first level of analysis is to examine the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). There is no indication in the text that anything other than the floating home is to be taxed. The context of the statute includes other provisions of the same statute and related statutes. *Ibid.* Analysis of the statute and related statutes reveals no intent of the legislature to include swim floats in the exception to the exemption. There is no discussion in the legislative history of taxation of personal property attached to floating homes.

> "If, after consideration of text, context, and legislative history, the intent of the legislature remains unclear, then the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty. *Id.* at 612.

■   In Oregon, exemptions are matters of legislative grace, and the exemption statutes are to be strictly, but reasonably, construed. *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 502 P2d 251 (1972).

Whether the swim float is part of a floating home is not governed by the law of fixtures because that law applies only to real property. Nevertheless, the court will consider those principles by analogy to aid in determining a reasonable construction of the statute.

■     The fixtures test for whether personal property retains its separate identity considers three factors: (1) annexation, (2) adaptation, and (3) intention. *Marsh v. Boring Furs, Inc.*, 275 Or 579, 581-82, 551 P2d 1053 (1976). In this case, chains wrapped around the logs supporting the swim float are attached to the corner mooring plates on the concrete float with clevis-type fasteners. No special modifications are required to facilitate this attachment. The clevis fasteners are easily unhooked for removal of the swim float. The swim float is not specially adapted to the floating home. It could be moored or anchored alongside of, but not to, the floating home and be equally available.

In considering the intent factor, the court should not consider the owner's actual subjective intent, but "an objective and presumed intention of that hypothetical ordinary reasonable person * * *." *Id.* at 583 (citations omitted). The evidence indicates that owners of similar floats use them for a variety of purposes, often attaching them not to floating homes, but to nearby piers and other mooring facilities. The wide variety of possible uses and methods of attachment make it obvious that there is little uniformity regarding such items, a factor which may have been considered by the legislature. The legislature may have decided the best and administratively wise policy is to ignore such items. In summary, the law of fixtures by analogy would not indicate the swim float is part of the floating home.

■     Swim floats are not specifically excluded from the exemption granted in ORS 307.190, and the court can find no indication the legislature intended to exclude them. Therefore, the court concludes that the swim float is not taxable.

The court finds that the real market value of the floating home as of July 1, 1991, was $147,162 ($152,000 less $4,838, for the assessed value of the swim float). Trending five percent for 1992 results in a value of $154,520. Based upon the evidence before it, the court finds that the real market value of the subject property as of July 1, 1992, was $154,520. Costs to neither party.